UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
HARREN & PARTNER SHIP MANAGEMENT          :
de MEXICO S.A.P.I. and TYPHOON OFFSHORE   :
S.A.P.I de CV,                            :
                                          :
            Petitioners,                  :
                                          :         21-_____
- against -                               :
                                          :
AMERICAN BUREAU OF SHIPPING,              :
ABS GROUP OF COMPANIES, INC.              :
ABSG CONSULTING, INC.                     :
ABS CONSULTING, LTD.                      :         JUNE  17, 2021
                                          :
            Respondents.                  :
------------------------------------------------------------------------X

## PETITION FOR INJUNCTIVE RELIEF AND DECLARATORY JUDGMENT

Petitioners, Harren & Partner Ship Management de Mexico S.A.P.I. ("H&P Mexico") and

Typhoon Offshore S.A.P.I de CV, ("Typhoon") (collectively "Petitioners"), by and through their

attorneys, Tisdale & Nast Law Offices, LLC, as and for their Petition against the Respondents,

American Bureau of Shipping ("ABS"), ABS Group of Companies, Inc., ABSG Consulting, Inc.,

and ABS Consulting, Ltd. (collectively "ABS Respondents" or "Respondents"), allege, upon

information and belief, as follows:

## NATURE OF ACTION

1.      Petitioners bring this action pursuant to 9 U.S.C. § 3 and 4, to stay an arbitration

commenced by the ABS Respondents and for a preliminary injunction to enjoin Respondents from

proceeding with the arbitration they have commenced.  Petitioners also seek a declaratory

judgment pursuant to Rule 57 of the Federal Rules of Civil Procedure that they are not bound by

any agreement to arbitrate disputes with Respondents.  Petitioners further seek permanent

injunctive relief pursuant to Rule 65 of the Federal Rules of Civil Procedure barring Respondents from pursuing any arbitration against them.

2.      As detailed in the memorandum of law accompanying Petitioners' preliminary injunction application, the basis for the stay and injunction is that there is no valid agreement between Petitioners and Respondents to submit any dispute to arbitration.

3.      Should Petitioners be forced to arbitrate a dispute where Petitioners have not entered into any agreement to arbitrate with Respondents, they will suffer irreparable harm.

4.      Petitioners seek declaratory judgment and a permanent injunction enjoining Respondents from further demanding or proceeding with arbitration against Petitioners.

<u>**PARTIES AND JURISDICTION**</u>

5.      Petitioner, H&P Mexico, was at all material times and still is a foreign corporation with its principal place of business in Mexico, and was at all material times a manager of vessels in maritime commerce.

6.      Petitioner, Typhoon was at all material times and still is a foreign corporation with its principal place of business in Mexico and was the owner of marine offshore unit TROLL SOLUTION on or about May 5, 2015.

7.      Respondent ABS was at all material times and still is a New York corporation, or other business entity, organized and existing under New York law, with an office and place of business at 45 Broadway, New York, NY 10006.  Respondent ABS demanded arbitration against Petitioner in New York.

8.      Upon information and belief, Respondent ABS Group of Companies, Inc. is a New Jersey registered foreign for-profit corporation with a place of business in Texas.  Respondent ABS Group of Companies, Inc. demanded arbitration against Petitioners in New York.

2

9.     Upon information and belief, Respondent ABS Consulting, Ltd. was at all material times and still is a UK registered limited company.  Respondent ABS Consulting Ltd. demanded arbitration against Petitioners in New York.

10.     Upon information and belief, Respondent ABSG Consulting, Inc. was at all material times and still is a New York registered business corporation with a place of business in Texas.  Respondent ABSG Consulting, Inc. demanded arbitration against Petitioners in New York.

11.     Respondents are subject to the personal jurisdiction of this Court and venue is proper here because they have demanded arbitration of their putative claim against Petitioners before an arbitration panel seated in New York, New York.  *Doctor's Assocs. Inc. v. Stuart,* 85 F.3d 975, 983 (2d Cir. 1996).  Further, Respondents ABS and ABSG Consulting, Inc. are incorporated in New York and are therefore subject to general personal jurisdiction in New York.

12.     This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1333.

13.     This matter also arises under the Court's federal question jurisdiction within the meaning of 28 U.S.C. § 1331.

14.     This Court also has subject matter jurisdiction over this matter pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq*.

15.     Subject matter jurisdiction exists in a declaratory judgment brought by a party claiming that it is not a party to a contract.  See *Garanti Finansal Kiralama A.S. v. Marine & Trading, Inc.,* 697 F.3d 59, 66 (2d Cir. 2012).

## FACTUAL BACKGROUND

16.     The TROLL SOLUTION was at all material times a self-propelled marine vessel known as a "jack-up rig" (hereinafter referred to as "Vessel").

3

17.     H&P Mexico was incorporated in Mexico in June 2014 and was at all material times managers of vessels including the TROLL SOLUTION.  At no time did H&P Mexico own the Vessel.

18.     Prior to February 2015, the owner of the Vessel was non-party, TROLLRIG 1 Ltd.

19.     Typhoon was incorporated in Mexico on December 17, 2013.  On December 31, 2013, Typhoon entered into a Finance Lease Agreement with Pathfinder BV, the Vessel's bareboat charterer.  Then, on February 17, 2015, Typhoon became the Vessel's registered Owner.

20.     On or about May 5, 2015, the Vessel was involved in a serious accident in the Bay of Campeche.  The Vessel collapsed requiring the onboard personnel including the workers to abandon ship, allegedly injuring numerous of its workers and killing one ("incident").

21.     One year later, on or about May 5, 2016, a group of 42 injured workers and the estate of 1 deceased worker (hereinafter referred to as "Texas Plaintiffs") commenced an action in the District Court of Harris County Texas, 125th Judicial District concerning the incident against the designer / architect of the Vessel.

22.     The Texas Plaintiffs also named Respondents ABS, ABS Group of Companies, Inc., ABS Consulting Ltd., and ABSG Consulting, Inc. as defendants in the Texas proceedings.

23.     The Texas Plaintiffs allege that the Respondents herein were negligent and/or negligently misrepresented the condition of the subject Vessel in connection with ABS' classing[1] of the subject Vessel.

---

[1] A Classification Society, such as ABS, classifies vessels and validates that their design and calculations are in accordance with the published standards. It also carries out periodical survey of vessels to ensure that they continue to meet the parameters of set standards.

4

24.     Nearly four years after being sued in the Houston action, on or about April 17, 2020, Respondents filed an amended Third-Party Petition in the Texas Proceedings naming Petitioners Typhoon and H&P Mexico as third-party defendants on the theory that Petitioners owe Respondents contribution and contractual indemnity since, Respondents allege, Petitioners hired ABS to class the subject Vessel and ABS' terms and conditions require that the client indemnify Respondents.

25.     Specifically, Respondents' Amended Third-Party Petition filed in the Houston action alleges as follows:

37.     On or about October 31, 2014, Pemex-Exploracion y Produccion entered into a contract numbered 421004891, or, similar agreement, with Typhoon, as rig owner, and H&P Offshore Mexico, as rig operator, for use of the Troll Solution to assist with the maintenance of PEMEX offshore facilities in the Gulf of Mexico from October 31, 2014 to February 14, 2017 ("PEP Contract"). The PEP Contract mandated the Troll Solution be classified by American Bureau of Shipping or by another classification society.

38.     Third-party defendants, Typhoon, H&P Mexico and H&P Ship Management, and by implication their respective parent corporations, predecessors, successors, subsidiaries or affiliates including, but not limited to, Grupo Salinas, S.A. de C.V. and Harren Ship Management, contracted to hire American Bureau of Shipping to class the Troll Solution over a multi-year period pursuant to American Bureau of Shipping's terms and conditions ("Class Contract").

39.     The Class Contract was entered into by the parties, in whole or in part, in Houston, Harris County, Texas over a multi-year period pursuant to American Bureau of Shipping's terms and conditions.

40.     The Class Contract, in relevant part, required Typhoon, H&P Mexico, H&P Ship Management, Harren Ship Management and related entities to release, indemnify and hold harmless American Bureau of Shipping from all claims, demands, lawsuits or actions for damages, including legal fees, to

5

persons and/or property, tangible or otherwise which may be brought against American Bureau of Shipping incidental to, arising out of or in connection with the classification work done by American Bureau of Shipping unless those claims were caused solely and completely by the negligence of American Bureau of Shipping.

41.    The Class Contract, in relevant part, also required any other individual, corporation, partnership or other entity who in any way participated in, was engaged in connection with or was a beneficiary of, any portion of American Bureau of Shipping's classification services to release, indemnify and hold harmless American Bureau of Shipping from all claims, demands, lawsuits or actions for damages, including legal fees, to persons and/or property, tangible or otherwise which may be brought against American Bureau of Shipping incidental to, arising out of or in connection with the classification work done by American Bureau of Shipping unless those claims were caused solely and completely by the negligence of American Bureau of Shipping.

26.    On October 28, 2020, the Texas court sustained Petitioner Typhoon's Special Appearance and dismissed the ABS Respondents' third-party petition as to Typhoon.  On that same date, the Texas court also sustained the Special Appearance of non-party Harren Ship Management GmbH & Co. KG and dismissed Respondents' third-party petition as to it.  On December 11, 2020, the Texas Court sustained H&P Mexico's Special Appearance and dismissed the case as to it.

## RESPONDENTS' ARBITRATION DEMAND

27.    On or about April 19, 2021, the ABS Respondents served Petitioners with a Demand for Arbitration in accordance with the Rules of the Society of Maritime Arbitrators of New York ("SMA"), alleging that Petitioners are subject to an arbitration agreement.  (A copy of ABS' Demand for Arbitration is attached hereto as **Exhibit 1**).

28.     This Demand does not refer to a specific agreement providing for arbitration of disputes.  It refers only to the ABS Terms and Conditions but makes no reference to a specific document incorporating those terms and conditions, or the date that Typhoon or H&P Mexico so agreed. Instead, it refers only to "the contractual terms and conditions under which ABS's services were performed…"

29.     On May 5, 2021, Petitioners requested additional time to respond to the ABS Respondents' arbitration demand including filing a petition to stay the demand and/or for a declaratory judgment to declare the demand invalid.  Respondents agreed to this and subsequent extension requests, ultimately agreeing to extend Petitioners' time up to and including June 18, 2021 to respond to the arbitration demand.

## NO AGREEMENT TO ARBITRATE EXISTS

30.     At no time did Typhoon and/or H&P Mexico agree to arbitrate disputes with the ABS Respondents for any services in relation to the TROLL SOLUTION or any other vessel.

31.     Neither H&P Mexico nor Typhoon entered into any contracts with ABS requiring Respondents H&P Mexico or Typhoon to arbitrate disputes with the ABS Respondents.

**A.**     **H&P Mexico's dealings with ABS**

32.     As the accompanying declaration of Captain Nedjeljko Mihaljevic, Managing Director of H&P Mexico, attests, although it appears that H&P Mexico arranged for the Vessel to undergo a special survey by ABS in August 2014, there is no evidence to indicate that H&P Mexico was provided with ABS' terms and conditions at that time.  Moreover, that survey was arranged on behalf of the Vessel's previous owners TROLLRIG I Ltd.  Upon information and belief, H&P Mexico had no dealings with any of the ABS Respondents during the period of two months between its incorporation in June 2014 and August 2014.

7

33.     In response to Petitioners' request for the contractual basis for the ABS Respondents' arbitration demand, Respondents referred to two invoices for services which were rendered for the benefit of the prior owners of the TROLL SOLUTION, TROLLRIG I, Ltd. **(Exhibit 2).**

34.     These invoices dated January 28, 2015 and March 18, 2015, issued to H&P Mexico and Typhoon, respectively, refer to services performed on August 16, 2014 for the Vessel's previous Owners, TROLLRIG I.

35.     As a ship manager, H&P Mexico never entered into any contracts or agreements with the ABS Respondents which required arbitration of disputes between them, nor was there a prior course of dealing between H&P Mexico and the ABS Respondents.  H&P Mexico is not the assignee or successors in interest to any party with an arbitration agreement with the ABS Respondents.

36.     Whatever dealings H&P Mexico had with any of the ABS Respondents, H&P Mexico was at all times the agent of a disclosed principal, namely the Vessel's previous owners, TROLLRIG I Ltd.

**B.     Typhoon's dealings with ABS**

37.     As the accompanying declaration of Bernardo Villacecias Gutierrez declares, prior to February 17, 2015, Typhoon was the lessee of the Vessel pursuant to a Financial Lease Agreement under which, all obligations concerning classification of the Vessel resided with the Lessor, Pathfinder BV, not Typhoon.

38.     As noted in paragraphs 33 and 34 above, in support of its argument that Typhoon agreed to arbitrate disputes, Respondents produced an invoice addressed to Typhoon dated March

18, 2015.  This invoice relates to services provided by ABS in August 2014 on behalf of TROLLRIG I, the prior owners.

39.     The ABS Respondents produced in the Houston action a confirmation of class certificate dated February 12, 2015.  This certificate, which Typhoon received as part of the closing of its purchase of the Vessel, makes no reference to an agreement to arbitrate between Typhoon and the ABS Respondents.

40.     After the Vessel was purchased, it appears a new ABS Certificate of Classification was issued for the TROLL SOLUTION dated February 20, 2015, reflecting the change in the Vessel's ownership.  The original is believed to have been lost with the Vessel on May 5, 2015. The certificate which was issued after the fact may have contained an arbitration provision (but Typhoon is uncertain of this fact) but this provision was never brought to the attention of Typhoon, nor was Typhoon aware of it.

41.     There has been no prior course of dealing between Typhoon and any of the ABS Respondents such that Typhoon was aware of the ABS Terms and Conditions.

42.     Typhoon never utilized the services of ABS for any other vessel and was not otherwise aware of ABS' terms.

43.     Typhoon was not a party to any contract with American Bureau of Shipping, ABS Group of Companies, Inc., ABS Consulting, Ltd., and/or ABSG Consulting, Inc. in connection with the TROLL SOLUTION.

44.     Typhoon is not an assignee of and/or a successor-in-interest to any party, or the beneficiary of any of the services provided by the ABS Respondents that would bind Typhoon to an agreement to arbitrate.

45.     ABS is expected to argue that ABS' Five Year Proposal which ABS Europe prepared, binds Petitioners alleging that the Proposal incorporates the scope and conditions of classification found in ABS' Rules for Building and Classing Mobile Off-Shore Drilling Units ("MODO Rules") which, in turn, incorporate the Conditions of Classification found in the Rules for Building and Classing Steel Vessel in which an agreement to arbitrate is among its terms. However, this Proposal was never accepted by either Petitioner.

46.     Neither Petitioner is a party, signatory or third-party beneficiary to any agreement to arbitrate with any of the Respondents.

47.     Respondents' Notice of Arbitration is therefore defective as there was no agreement to arbitrate.

48.     The question of whether this matter is subject to arbitration "is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise."  See *Howsam v. Dean Witter Reynolds, Inc.,* 537 U.S. 79, 83, 123 S. Ct. 588, 154 L. Ed. 491 (2002).  Because there is no arbitration agreement between the parties, the Court, and not an arbitration panel, must determine the issue of arbitrability.

### THIS COURT SHOULD ENJOIN RESPONDENTS FROM PURSUING THE ARBITRATION AGAINST PETITIONERS

49.     Petitioners repeat, reiterate and reallege the allegations set forth above as if fully set forth herein.

50.     Arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which it has not agreed to submit.

51.     Petitioners are not party to any arbitration agreement with Respondents and Petitioners are not bound by any agreement to arbitrate with Respondents.

52.     Petitioners will be irreparably harmed if Respondents are permitted to pursue the New York arbitration against either or both of them because arbitration is a creature of contract and no contract containing an arbitration agreement exists.  *China Shipping Container Lines, Co., Ltd. v. Big Port Services DMCC,* 15 Civ. 2006, 2019 WL 9362547 at *a, n. 15 (S.D.N.Y. January 15, 2019), aff'd., 803 Fed. Appx. 481 (2d Cir. 2020).

53.     Petitioners are likely to succeed on the merits of their claims as they were not parties to any arbitration agreement with Respondent.

54.     Petitioners have no adequate remedy at law and are therefore entitled to injunctive relief barring Respondents from pursuing the New York arbitration against them.

55.     No previous application has been made for the relief sought herein.

**WHEREFORE**, Petitioners respectfully request that the Court:

A.     Issue an Order temporarily and then permanently staying the New York Arbitration commenced by the Respondents;

B.     Enter Declaratory Judgment in favor of Petitioners holding that there is no agreement to arbitrate as between either or both Petitioners and any of the ABS Respondents;

C.     Grant Petitioners such other relief as may be just and proper in the circumstances.

11

Dated: June 17, 2021
     New York, NY

                            Attorneys for the Petitioners,
                            Harren & Partner Ship Management de
                            Mexico S.A.P.I. and Typhoon Offshore
                            S.A.P.I de CV,

By:  */s/ Thomas L. Tisdale*
       Thomas L. Tisdale
       Timothy J. Nast
       Tisdale & Nast Law Offices, LLC
       200 Park Ave., Suite 1700
       New York, NY 10166
       Tel:    212 354 0025
       Fax:   212 869 0067
       *ttisdale@tisdale-law.com*
       *tnast@tisdale-law.com*